GEORGE S. KENWAY, by his Guardian, Mary Ann Kenway, *vs.* CHARLES NOTLEY.

EXCEPTIONS FROM RULINGS OF McCULLY, J.

JANUARY TERM, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

A lease of lands conveyed to husband and wife, and purporting to be made by them, but executed by the husband only, on which the wife received rent after the husband's death : Held to have been ratified by the wife.

Re-argument refused.

OPINION OF THE COURT, BY AUSTIN, J.

THIS case is here on exceptions to the direction of Mr. Justice McCully to the jury, at the January Term, to find a verdict for the defendant.

The action was ejectment. By Royal Patent No. 2321, dated September 15, 1856, the land in dispute was granted to George S. Kenway and Mary Ann Kenway, his wife. He died in 1872, and she, by deed dated September 13, 1877, conveyed said land to her infant son, the plaintiff, who now holds the fee. It further appeared that, on the second day of September, 1867, a lease was executed of said land, expressed in the body of it to be from the said George S. and Mary Ann Kenway of the first part, for themselves and on behalf of their three daughters named therein, to S. Kipi of the second part, for the term of twenty years, at the annual rent of fifty dollars. And the said Kipi covenants to pay to the said Kenways the said rent, and further covenants with them " that he will put into good habitable condition, and so maintain at his own expense during the term of the lease, all the buildings now on or that may hereafter, during the term of this lease, be built on the said land and premises, and that he shall and will allow the said George S. Kenway and Mary Ann Kenway and their family or any part thereof free access to and freely to dwell on the said leased premises, and freely to cultivate and

use so much of the said land as they may require for their own purposes, and to have the freedom of pasture on the said land for their own animals during the full term of the said lease." This lease was executed and acknowledged by George S. Kenway alone with S. Kipi, the lessee.

It further appeared that on the sixth day of August, 1875, the said Kipi assigned said lease to the defendant Charles Notley, who now claims, subject to the performance by him of all its conditions, the possession under it.

It further appeared that Mrs. Kenway signed eight receipts for rent to Notley, which are on file. The first receipt in evidence was dated December 11, 1875, and the last receipt was dated August 21, 1883, and she admitted that the rent was paid to her in full from the time of her husband's death to September 2, 1883.

The land is referred to in the lease as situated in the Ili or Ahupuaa of Paauilo, Hamakua, Hawaii.

The receipt dated Hilo, December 13, 1875, is as follows :

" Received of Mr. Chas. Notley the sum of $27, the same being for rent of land called Paauilo, in district of Hamakua, Hawaii, viz., for twelve months' rent to September the first, 1875.

" MARY ANN KENWAY."

The other receipts are similarly worded. The receipt dated Onomea, Hilo, September 9, 1878, is as follows, manifestly written in her own hand :

" MR. C. NOTLEY—Sir : I have this day received the sum of $50 in full, the same being for the rent of my land on Paauilo, commencing on the 2d of September, 1877, and ending on the first of September, 1878. Yours truly,

" MARY ANN KENWAY."

She testified that she had never seen the lease presented to her, and on file, but had often heard of it from her husband, and knew that it included the land in suit.

By the deed to George S. and Mary Ann Kenway, they became owners of the land therein described by entireties (see *Paahana vs. Bila*, 3 Hawn., 725), and upon his death in 1872 his wife became the sole owner thereof as his survivor. The defendant claims that, by virtue of the receipts for rent as shown, Mrs.

Kenway has ratified the lease he holds by assignment, and that he can thereby hold the possession of the land as lessee. The plaintiff claims that this is not so. That at the best the rule of ratification claimed by the defendant is in doubt on the authorities, and that the more reasonable rule, in strict law, is that the lease, which the widow did not execute, was void at her husband's death, and can in no way be revived or ratified.

By law in this country, up to the time of his death George S. Kenway had the right to the rents and profits of the land in question, and the right to lease the same, and his wife had no power to make a contract to lease it without his consent. Had she signed and not acknowledged it, in England and in many of the United States, her signature would have been of no effect, and she might have refused to be bound by it, either before or after her husband's death. It is admitted by the counsel for the plaintiff that had she so signed this lease either in England or the United States, her subsequent acceptance of rent as shown would have been a valid ratification of it.

The text books and authorities cited amply prove this to be so. Also the text books cited by the defendant's counsel say, " that a lease made by the husband of his wife's land for a term that extends beyond his own life is not void as to the wife, but on his decease she may elect whether to affirm or defeat it, and if she accepts rent accruing thereon after her husband's decease, she will thereby be estopped from denying the validity of the lease for the balance of the term."

This is substantially maintained by Wood's Landlord and Tenant, p. 163; Taylor on Landlord and Tenant, Sec. 102; Bright on Husband and Wife, p. 197; Bishop on Married Women, Vol. 1, Sec. 547; and Bright also cites Jarman on Conveyances as sustaining this view of the law.

On examining the authorities cited by these text writers, however, several of them are found to be of cases where the lease was executed by the wife, defectively, which the plaintiff claims is a fatal difference for the defendant. Other cases cited, however, sustain the doctrine of the text books, and the defendant claims that they contain the better rule, and that the other rule is technical and unreasonable.

The strongest statement that we have found for the plaintiff's position appears in *Jackson vs. Holloway*, 7 Johns. 186, in which case a lease had been made by the husband alone, but thereafter a lease was made and properly acknowledged by both the husband and wife, and the husband died. The wife had accepted rent of the first lessee after her husband's death, and the Court held that, by the lease subsequently made, which was valid, the right of the widow to confirm or ratify the first lease was taken away.

The Court, Thompson, J., said: "It would seem a little incongruous to speak of a deed as voidable by a person who was not a party or privy to it, nor had any agency in its execution. The very term implies some agency in the act which is to be avoided. But it is unnecessary to give any opinion on this point."

Although this is *obiter dictum*, its reasoning must be considered, and in a bald case of execution by a husband alone, with covenants running to him alone, it may be it ought to prevail.

It seems, however, a narrow construction which terms that a signature which is of no legal effect whatever when made.

A case throwing light on the matter is *Goodright vs. Strathan*, Cowper, 204.

In that case the instrument executed, though in form of a lease for 99 years, by husband and wife, was in substance a mortgage; it was therefore held absolutely void, and not voidable as though a lease, which was held voidable by the ancient rule in favor of agriculture and tillage. But Lord Mansfield said: "In conscience she has confirmed this security, which was entered into for the maintenance and support of herself and family."

And it was held that her acts, after her husband's death, of surrendering possession in writing to the mortgagee of the land, and in an account stated, allowing interest on the mortgage, and also in directing the tenant of the land to *attorn* to the mortgagee of the property, were equivalent to a confirmation of the mortgage "upon the ground of their being equivalent to a redelivery of the deed."

See also *Doe vs. Howland*, 8 Cow. 277, where an acknowledgment by a widow, after her husband's death, of an unacknowledged signature made before his death, was held to take effect as of the time she acknowledged it.

In the case at bar, however, there was a covenant to pay rent to Mary Ann Kenway and her husband, and also that she and her family might occupy buildings and use valuable parts of the land necessary for their own purposes, and a covenant to repair those buildings, as quoted. Mrs. Kenway, beyond question, had a right, after her husband's death, to accept of those covenants for the benefit of herself and her family. They are like a deed-poll to her of real estate of value. In such case she would be presumed to accept it unless she expressly dissented.

Bishop on Married Women, Section 540, says:

"If, therefore, a lease of the wife's land is made by the husband and wife jointly, or by the husband alone, and the lessee covenants to pay the rent to the wife or to the husband and wife, the husband may sue for the rent in his own name alone, or he may join his wife with him, or, if he dies before suit brought, she may sue for it in her own name, and recover it to her own use." If, when Kenway died, there were rents due, Mrs. Kenway, on this covenant to her, in a lease she did not execute, could sue and recover in her own name. So here, having received rent due after her husband's death, she thereafter, we doubt not, may continue to receive the rent under the covenant to her.

"It has been held that a party to an indenture made and executed by another to him, will become a covenantor, and liable as such, though he may not sign and seal the deed, if he is named in it, and accepts it, and it contains covenants which by the terms of the deed he is to perform."

Martindale on Conveyancing, Sec. 61, citing *Finley vs. Simpson*, 22 N. J. L. 311 ; also id., Sec. 220.

" A deed void when delivered may be ratified and confirmed by the grantor, after he has full knowledge of the facts, by any word or act of his which shows a clear intention on his part that the deed shall be considered as having been properly executed and delivered and as conveying the title to the property."

But the plaintiff's counsel claims that Mrs. Kenway is not bound by the receipts, because when made she did not know her rights as to the lease. We think she certainly knew all the substantial facts about it.

She knew that the land was hers solely after her husband's

death, and that she had personally executed no lease of it, and that her husband had made a lease dated September 2d, and that the rent was fifty dollars a year ; and she must have known of the covenants to repair the buildings by the defendant, and of her right to occupy them and the adjacent land with her family.

Knowing all these facts, she must be presumed to have known that there was no lease binding on her.

The maxim " *Ignorantia legis neminem excusat* " applies with force to her, especially after these repeated acts recognizing the lease.

See Story Eq. Jur., Sec. 111.

Under the English law formerly, a will which was not signed at the end of it, but contained in the body of it the name of the testator, he having declared it to be his will, was a valid will. The name of Mrs. Kenway appears as a covenantee in this lease. If she substantially knew the contents of the lease, the receipts which she so repeatedly signed may be considered as written upon the lease, and they constitute a ratification of it, and an acceptance and confirmation of its covenants, which it would be most unreasonable to annul and set aside.

What may be the value of the lease at this time is not in evidence. The plaintiff's counsel claims it is now very valuable to the defendant. This may be so. But at the death of Kenway, in 1872, and for several years after, and up to the passage of the treaty with the United States, it would seem to us to have been, with all its conditions, a valuable lease to Mrs. Kenway, and she may well have thought it best to let it stand, as she did.

The counsel for the plaintiff has examined and presented the cases akin to the question at bar with great industry and ability. We have examined many of the cases to whicn he refers, but they fail to convince us that he is right, and for the reason above set forth the exceptions must be overruled.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for defendant.

Honolulu, February 12, 1884.

### MOTION FOR REARGUMENT.

On the motion for reargument the Court say that they doubtless

have a discretion to grant a reargument, and would do so in a proper case.

In *Mount vs. Mitchell*, 32 N. Y. 702, the Court of Appeals of New York adopted the rule that " Motions for reargument should be founded on papers showing clearly that some question decisive of the case, and duly submitted by the counsel, has been over-looked by the Court; or that the decision is in conflict with an express statute, or with a controlling decision to which the attention of the Court was not drawn through the neglect or inadvert-ance of counsel."

We think this a fair rule, and are willing to adopt it in this case.

The first claim of the counsel is that the Court overlooked the point made by him that the facts of the case should have been submitted to the jury, and that a verdict was directed by the Court.

The opinion does not mention the fact that this point was con-sidered by the Court, but it was in fact so considered, and the ob-jection was deemed untenable. The Court still think that it was so. There were no disputed questions of fact in the case. The Court then, and on the appeal, held that as matter of law, upon the undisputed facts, the defendant was entitled to a verdict, and a verdict, therefore, was directed. This is now the universal rule. Also, in our view of the law, a verdict for the plaintiff should have been set aside, and in such a case we have recently held that the direction of a verdict would have been proper.

See *Kamalu vs. Lovell, ante,* 62.

Every point made by the plaintiff's counsel on the argument was fully considered by the Court, though all were not mentioned in the opinion. He now says he thinks that the effect of the statute of frauds upon the question at bar was not fully appre-hended or considered by the Court. We have again examined the question in this aspect of it, and still believe, as we thought before, that for the reasons stated in the opinion the statute of frauds does not necessitate the reversal of the judgment below.

The counsel refers to a statement of the Court as to the former English statute of wills, and cites Redfield on Wills as showing error. On looking at the place referred to we find the law laid down exactly as it was stated from memory by the Court. The

citation was made as an aid and an illustration and not as controlling, and we still think it was appropriate for that purpose.

We think the plaintiff's papers do not bring his motion within the rule we have adopted, and it is denied.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for defendant.

Honolulu, February 25, 1884.